Ray BOHN, Commissioner, Department of Labor and Industry, Respondent,

v.

**CEDARBROOK ENGINEERING COMPANY, Relator.**

No. C1-88-8.

Court of Appeals of Minnesota.

May 3, 1988.

Review Denied June 10, 1988 and June 29, 1988.

Hubert H. Humphrey, III, Atty. Gen., Kathleen Winters, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Eric Forsberg, Minneapolis, for relator.

Heard, considered and decided by CRIPPEN, P.J., and HAROLD W. SCHULTZ* and FLEMING, JJ.

## OPINION

CRIPPEN, Judge.

Relator Cedarbrook Engineering Company appeals from an administrative law judge's order holding that it unlawfully discriminated against one of its employees, complainant David Berthiaume, by discharging him for engaging in a protected activity as defined by Minn.Stat. § 182.654 (1986). We affirm.

## FACTS

Cedarbrook is a foundry which manufactures aluminum die cast parts. During the manufacturing process, a certain amount of contaminated scrap material is generated. This material may be remelted and reused in the manufacturing process. However, a large amount of smoke is generated during the remelting process.

Berthiaume commenced employment with Cedarbrook on May 29, 1984. He was initially employed as a trimmer, but was subsequently reassigned to the position of remelter. As a remelter, Berthiaume was responsible for melting contaminated and uncontaminated aluminum scrap.

On March 20, 1986, Cedarbrook conducted a meeting for its employees pursuant to the Minnesota Employee Right to Know Act, 1983 Minn.Laws, ch. 316. At this meeting, several employees expressed concerns about smoke generated during the remelt process. As a result of these complaints, Cedarbrook adopted a new policy providing that contaminated scrap should not be burned during regular working hours.

Cedarbrook's new policy was not put into writing, but was conveyed to the remelt operators, including Berthiaume. Upon being notified of the new plan, Berthiaume informed the second shift foreman that he would try to follow the new policy but that compliance would not always be possible, as production demands often required scrap to be burned during the shift. Berthiaume was never told that the new policy was a strict rule or that an employee would be disciplined for violating the plan. Following announcement of the new plan, company resmelters continued to encounter occasions when resmelting of contaminated scrap had to occur during regular working hours, and these incidents produced no comment of relator's supervisors.

On May 7, 1986, a state safety inspector was conducting an inspection of Cedarbrook during Berthiaume's shift. The inspection occurred because of a February 1986 complaint regarding smoke from resmelting scrap. Several of Berthiaume's co-workers became aware that the plant was undergoing the inspection and asked Berthiaume to demonstrate smoke problems associated with the scrap remelting process. Consequently, Berthiaume proceeded to remelt a barrel of contaminated scrap and the work area filled with smoke.

At this point, the inspector began to collect samples of the smoke. Berthiaume advised the inspector of locations where smoke accumulations were greatest and suggested the inspector take samples in

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

those areas. The inspector considered this information to be helpful.

Roger Griep, Cedarbrook's secretary-treasurer, entered the production area at the time and fired Berthiaume. Despite the fact that contaminated scrap continued to be burned during working hours as late as one year after Berthiaume's dismissal, only Berthiaume was disciplined for violation of the new procedure. Before leaving the work place, Berthiaume told the second shift foreman that he had been asked by other workers to burn the scrap to demonstrate smoke problems for the state inspector. Berthiaume also informed the inspector that the reason for his termination was that he had burnt scrap while the inspector was doing air sampling. Berthiaume filed a formal discrimination complaint with OSHA on May 12, 1986.

During the investigation of Berthiaume's complaint, Griep told investigators that Berthiaume was fired for burning scrap while the state inspector was in the plant. However, at the hearing on this issue, Griep testified that Berthiaume was fired for breaking a company rule.

Cedarbrook appeals from the decision that it illegally discriminated against Berthiaume by terminating him for engaging in a protected activity.

## ISSUES

1. Are the administrative law judge's findings, concerning the motivation for Berthiaume's demonstration and Cedarbrook's firing of Berthiaume, supported by substantial evidence in the record?

2. Did Cedarbrook illegally discriminate against Berthiaume by firing him for engaging in an activity protected by statute?

## ANALYSIS

### I.

 Cedarbrook's initial argument is that the administrative law judge's findings are not supported by the record and must be reversed. We may reverse or modify the judge's decision if substantial major rights of the petitioner have been prejudiced because administrative findings are unsupported by substantial evidence in view of the entire record as submitted. Minn.Stat. § 14.69(e) (1986).

Cedarbrook contends the judge erred in finding that Berthiaume's demonstration was motivated by a desire to call attention to health concerns, rather than merely the act of a disgruntled employee. Cedarbrook also contends the judge erred in finding that Berthiaume was terminated for demonstrating a safety concern to an inspector, and not for violating a company safety rule. Finding adequate evidence supporting the judge's findings, we conclude that the decision should not be modified or reversed.

### II.

 Cedarbrook also contends the administrative law judge erred in concluding that Berthiaume's demonstration constituted a complaint, and therefore a protected activity, as defined by the Minnesota Occupational Safety and Health Act, Minn.Stat. §§ 182.65–.675 (1986). We are unpersuaded by Cedarbrook's argument that the statute only protects those employees able to put their complaints in writing. The broad remedial purpose of the Act mandates liberal construction of its provisions, including the language "filed any complaint." *See Donovan v. R.D. Andersen Construction Co.*, 552 F.Supp. 249, 252–53 (D.Kan. 1982) (federal court interpreting analogous federal statute).

The legislature has placed no explicit limitation on the type of complaints which are protected by the statute. Rather, the Act protects from discriminating any employee who has "filed any complaint * * * under or related "to the Act." Minn.Stat. § 182.654, subd. 9 (1986). Furthermore, federal courts, analyzing substantially identical provisions, have held that statutory protection is not limited only to those employees making written complaints. In *Power City Electric, Inc.*, 1979 O.S.H.D. (CCH) paragraph 23,947 (Oct. 23, 1979), the United States District Court for the Eastern District of Washington held that an oral complaint, made to an employer, was a

protected activity under the federal statute. *See also Donovan,* 552 F.Supp. at 253 (holding employee's communication with media to be a protected activity). Consequently, we conclude that the Minnesota Act provides protection to employees utilizing either written or oral complaints.

Concluding that the statute provides protection to employees making oral complaints, we find no reason in this case to distinguish between oral complaints and demonstrations. While other oral and written complaints ordinarily provide employees with an adequate means to convey safety concerns, we recognize that in some situations demonstrations provide a more efficient and effective means for calling attention to safety concerns in the work place.

Finally, Cedarbrook's argument that employee demonstrations are too dangerous and should not be protected by the statute, has not properly been raised by the facts of the present case. Berthiaume's demonstration did not create any immediate, life threatening danger to himself, his co-employees, or the state inspector. Furthermore, we decline to hold that an employee's demonstration, which consists of performing acts which are a regular, repeated part of his employment, is too dangerous to be protected by the Minnesota Act.

### DECISION

The administrative law judge's decision, holding that Berthiaume's demonstration was a protected activity and that Cedarbrook illegally discriminated against Berthiaume by terminating his employment for engaging in a protected activity, is affirmed.

Affirmed.